# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JESSE TOURVILLE,** for himself and all others similarly situated,<br><br>      Plaintiffs,<br>  v.<br><br>**MBR MANAGEMENT CORPORATION,**<br><br>      Defendant. | CASE NO.<br><br>**COLLECTIVE / CLASS ACTION COMPLAINT**<br><br>**ECF CASE**<br><br>**JURY TRIAL DEMANDED** |

## CLASS / COLLECTIVE ACTION COMPLAINT

Plaintiff Jesse Tourville ("Plaintiff") by his undersigned attorneys, on behalf of himself and on behalf of all others similarly situated, hereby makes the following allegations against Defendant MBR Management Corporation ("MBR" or "Defendant"), with personal knowledge as to his own actions, and upon information and belief as to those of others:

## NATURE OF THE ACTION

1. This action seeks to redress Defendant's systematic policy and practice of paying its delivery drivers hourly wages well below the minimum required by the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. Ann. § 105/1 *et seq.* ("IMWL"), and the Illinois Wage Payment and Collection Act., 820 Ill. Comp. Stat. Ann. § 115/3 *et seq.* ("IWPCA").

2. The FLSA, IMWL, and IWPCA, MMWL, like virtually all minimum wage laws, require employers to provide their employees with sufficient reimbursements for employment-related expenses ("kickbacks") to ensure that employees' hourly wages equal or exceed the required minimum wage after such expenses are counted against the hourly wages. However,

{00284131 }

Defendant systematically under-reimbursed its delivery drivers for vehicular wear and tear, gas, and other driving-related expenses, thereby ensuring that all of Defendant's delivery drivers are effectively paid well below the minimum wage.

3.  Plaintiff worked as a delivery driver for Defendant in Illinois. In violation of the FLSA, IMWL, and IWPCA, Defendant under-reimbursed Plaintiff and his colleagues for vehicular wear and tear, gas, and other driving-related expenses, thereby effectively paying them well below the minimum wage. Defendant continues to under-reimburse its delivery drivers, preferring to selfishly pocket excess profits rather than fairly pay its employees.

4.  Plaintiff brings his IMWL and IWPCA claims as a class action pursuant to Fed. R. Civ. P. 23 for all persons employed as delivery drivers at any store owned by Defendant in Illinois during the maximum allowable limitations period.

5.  Plaintiff bring this claim as a collective action pursuant to 29 U.S.C. §216(b) for all delivery drivers Defendant employed during the maximum limitations period.

## JURISDICTION AND VENUE

7.  This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) because at least one Class member is of diverse citizenship from the Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5,000,000.

8.  This Court also has jurisdiction under the provisions of the FLSA pursuant to 29 U.S.C. § 216(b) and under 28 U.S.C. § 1331 (federal questions jurisdiction), and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

9. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in this District, worked for Defendant in this District, and suffered the losses at issue in this District. Defendant is also liable for operations at multiple Domino's pizza stores in this District; Defendant maintains significant business contacts within this District; and Defendant engaged in the unlawful conduct alleged in this Complaint within this District.

## PARTIES

10. Plaintiff Jesse Tourville is an adult resident of Shiloh, Illinois, in St. Clair County, who worked as a delivery driver for Defendant at its Domino's store at 427 Edwardsville Road, in Troy, Illinois.

11. Defendant MBR Management Corporation is a Missouri corporation with its principal executive office in St. Charles, Missouri. MBR is a Domino's Pizza franchisee in the United States, and operates 80 Dominos restaurants throughout Illinois and Missouri, including the store where Plaintiff was employed.

## BACKGROUND FACTS

12. The primary function of Domino's Pizza restaurants, including all such restaurants owned and operated by Defendant, is to sell pizza and other foods and beverages. Accordingly, Defendant was engaged in commerce.

13. Domino's Pizza restaurants, including those operated by Defendant, are employers under the FLSA, IMWA, and IWPCA. During the relevant time period and to date, Defendant's annual profits have always been well in excess of $500,000. Defendant paid and supervised its employees, including Plaintiff and other delivery drivers.

14. Defendant employed delivery drivers, all of whom have the same job duty: to deliver pizzas and other food and beverages to customers. Plaintiff and all other delivery drivers are clearly employees within the meaning of the FLSA, IMWA, and IWPCA.

15. Some delivery drivers worked inside their restaurant during certain hours and work as delivery drivers at other times.

16. During Plaintiff's tenure as an MBR employee, he consistently worked approximately 25-35 hours per week, with the majority of his time spent "on the road" making deliveries.

**DEFENDANT'S POLICY OF SYSTEMATICALLY
UNDER-REIMBURSING DELIVERY DRIVERS**

17. The majority of food and drink orders placed at Defendant's restaurants are for home delivery.

18. During a typical seven-hour shift, delivery drivers spend about four hours "on the road" making deliveries.

19. Throughout the relevant period, Defendant required each of its delivery drivers to maintain and provide a safe, functioning, insured, and legally-operable automobile to make deliveries. These vehicles, typically two- and four-door passenger cars, weigh less than 10,000 pounds.

20. Throughout the relevant period, Defendant required its delivery drivers to bear the "out-of-pocket" costs associated with their vehicles, including costs for gasoline, vehicle depreciation, insurance, maintenance, and repairs.

21. For decades, the Internal Revenue Service ("IRS") has calculated and published a standard mileage reimbursement rate ("IRS rate") for businesses and employees to use in computing the minimum deductible costs of operating an automobile for business purposes.

22. In 2014, the IRS rate was $0.56 per mile; in 2015, the IRS rate was $0.575 per mile; in 2016 the IRS rate was $0.54 per mile; in 2017, the IRS rate is $0.535 per mile.

23. Since 2010, many reputable companies that study the cost of owning and operating a motor vehicle and/or estimating reasonable reimbursement rates for vehicular travel, including the American Automobile Association, have consistently set the average cost of operating a vehicle at rates significantly higher than that set by the IRS.

24. Defendant's delivery drivers typically experienced lower gas mileage, more rapid vehicle depreciation, and greater vehicular expenses than the average business driver because they typically drove in urban areas, in "start-and-stop" traffic, on a tight schedule, at night, and in inclement weather.

25. Insurance providers recognize the hazards of working as a pizza delivery driver. Unsurprisingly, pizza delivery drivers pay significantly higher automobile insurance rates than do regular drivers,[1] and some pizza companies even provide their drivers with automobile insurance coverage.[2] Defendant does not provide insurance for its drivers.

---

[1] *See Auto insurance an important piece of the pie for pizza delivery vehicles*, NETQUOTE, http://www.netquote.com/auto-insurance/pizza-delivery-vehicles (last visited Mar. 24, 2017).

[2] See *The Hidden Risks of a Pizza Delivery Business*, TRUSTED CHOICE INDEPENDENT INSURANCE AGENTS, https://www.trustedchoice.com/small-business-insurance/restaurant-food/pizza-delivery/ (last visited Mar. 24, 2017).

26. Thus, during the relevant period, the actual "out-of-pocket" costs that Defendant's delivery drivers paid to provide a safe, functioning, insured, and legally-operable automobile for their deliveries was at least $0.535 per mile.

27. During the relevant period, Defendants' delivery drivers made an average of approximately five deliveries per hour which required them to drive an average of 25 miles each hour (averaging five miles per delivery), meaning they paid "out-of-pocket" at least approximately $13.38 per hour to provide, operate and maintain their vehicles.

28. To reimburse Plaintiff and his colleagues for their driving expenses, Defendants reimbursed them $1.40 or less per delivery during the relevant period.

29. Thus, Defendants would reimburse its delivery drivers approximately $7.00 for a typical hour (five deliveries per hour times $1.40 reimbursement per delivery equals $7.00 total reimbursement per hour). This $7.00 was far less than the approximately $13.38 in expenses Plaintiff and his colleagues incurred in delivering pizzas for Defendants' benefit.

30. Plaintiff and all of his colleagues were paid the tipped minimum wage for their respective states for all time they spend on the road as delivery drivers. Because Defendant paid the minimum wage, it was legally obligated to fully reimburse Plaintiff and his colleagues for the full amount of their driving expenses. However, Defendant failed to fully reimburse its drivers for the full amount of their driving expenses, thus forcing the drivers' total compensation far below the minimum.

31. Defendant's systematic failure to adequately reimburse delivery drivers for their automobile expenses constitutes a kickback to Defendant, such that the hourly wages it pays and

has paid to Plaintiff and other delivery drivers are not paid free and clear of all outstanding obligations to Defendant.

## FLSA COLLECTIVE ACTION ALLEGATIONS

32. Plaintiff bring a collective action pursuant to 29 U.S.C. §216(b) on behalf of a proposed collective defined to include:

> All persons Defendant employed as a delivery driver during any workweek in the maximum limitations period whose claims were not completely resolved in *Nyazee v. MBR Management Corp.*, No. 14-1561 (E.D. Mo.).[3]

33. Plaintiff reserves the right to modify the proposed collective definition at a later stage of litigation.

34. Plaintiff is a member of the proposed collective he seeks to represent because he worked for Defendant as a delivery driver during the relevant period and suffered the minimum wage violation alleged above.

35. This action may be properly maintained as a collective action on behalf of the putative Class because, during the relevant period:

   a. Plaintiff and the Class members had the same employers;

   b. Plaintiff and the Class members performed the same type of work;

---

[3] "Completely resolved" means that the employee was a named plaintiff or an opt-in plaintiff in *Nyazee v. MBR Management Corp.*, and was subject to a release in the settlement agreement entered in that case that fully subsumes all of the employee's claims asserted in this action. To the extent a member of the *Nyazee* class has claims that extend past or prior to the statutory period covered by *Nyazee* and are co-extensive with the claims in this litigation that employee's claims were not completely resolved in *Nyazee*.

{00284131 }  7

c. Plaintiff and the Class members were governed by the same compensation policies, practices, and systems;

d. Plaintiff and the Class members were subjected to the same policies relating to the payment of supplemental wages to offset vehicle maintenance costs;

e. Plaintiff and the Class members were governed by the same payroll policies, practices, and systems;

f. Defendant's labor relations and human resources systems were centrally-organized and controlled, and controlled the policies and practices at issue in this case.

36. Plaintiff estimates that the collective group, including both current and former employees over the relevant period, will include thousands of members. The precise number of members should be readily available from Defendant's personnel, scheduling, time and payroll records, and from input received from the Class members as part of the notice and "opt-in" process provided by 29 U.S.C. §216(b). Given the composition and size of the Class, its members may be informed of the pendency of this action directly via U.S. mail, e-mail, and the posting of written notices at Defendant's work sites.

## STATE LAW CLASS ACTION ALLEGATIONS

37. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this class action on behalf of himself and the following Class of similarly-situated individuals:

> All persons Defendant employed in Illinois as a delivery driver during any workweek in the maximum limitations period (the "Illinois Class").

38. The Illinois Class specifically excludes Defendant; any parent, subsidiary, or

affiliate of Defendant; any entity in which Defendant has or had a controlling interest, or which Defendant otherwise controls or controlled; any officer, director, legal representative, predecessor, successor, or assignee of Defendant; and the Court and Court personnel.

39. The Illinois Class is so numerous that joinder of all members is impracticable. The number and identity of class members may be determined by Defendant's records, but the class size very likely exceeds 1,000 people.

40. There are substantial questions of fact and law common to Plaintiff and all Illinois Class members, including, *inter alia*:

   a. Whether Defendant required Plaintiff and the Illinois Class members to pay their "out-of-pocket" vehicle maintenance costs;

   b. Whether Defendant violated the IMWL and/or IWPCA by failing to pay Plaintiff and the Illinois Class members supplemental wages to offset their vehicle maintenance costs and ensure that they received more than the required minimum hourly wage;

   c. Whether Defendant was unjustly enriched by failing to properly reimburse delivery drivers; and

   d. Whether Plaintiff and other similarly situated employees of Defendant are entitled to additional wages based on a theory of unjust enrichment.

41. Plaintiff's claims are typical of the Illinois Class.

42. Plaintiff will fairly and adequately protect the interests of the Illinois Class. His claims span the breadth of issues raised in this action.

43. Plaintiff's counsel are appropriately qualified to represent the Illinois Class as Class Counsel.

44. Joinder of Illinois Class members' individual actions is impractical because of the limited ability of individual Illinois Class members to institute separate suits and the general nature of the underlying action and relief sought. The prosecution of separate actions by individual Illinois Class members would create a risk of inconsistent results that could establish incompatible standards of conduct for Defendant.

45. Defendant has acted and refused to act on grounds generally applicable to the Illinois Class, making appropriate final injunctive relief with respect to the Illinois Class as a whole.

46. Defendant's liability for damages can be established by facts and circumstances common to the Illinois Class as a whole and does not require the examination of Plaintiff's individual circumstances.

47. Questions of law and fact common to members of the Illinois Class predominate over any questions affecting only individual members.

48. A class action is superior in this case to other methods for a fair and efficient adjudication of the controversy because: (A) the common interests of the Class members predominate over any individual interest in controlling prosecution or control of separate actions; (B) no similar litigation between the parties is currently pending in court; (C) concentrating litigation of this action in this Court is appropriate to ensure appropriate, consistent, and efficient resolution of the issues raised; and (D) there will be no significant difficulties in managing an action involving this Class.

# CLAIMS FOR RELIEF

## COUNT I - VIOLATION OF THE FAIR LABOR STANDARDS ACT
(On Behalf Of Plaintiffs And The FLSA Collective)

49. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing allegations as though fully set forth herein.

50. Defendant is an "employer" as defined by 29 U.S.C. § 203(d).

51. Plaintiff and the collective group members are "employees" as defined by 29 U.S.C. § 203(e)(1) and "tipped employees" as defined by 29 U.S.C. § 203(t).

52. The wages Defendant paid to Plaintiff and the collective group members are "wages" as defined by 29 U.S.C. § 203(m).

53. The direct and supplemental wages Defendant paid to Plaintiff and the collective group members are "wages" as defined by 29 U.S.C. § 203(m).

54. Defendant is an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

55. Plaintiff and the collective group members are similarly situated individuals within the meaning of 29 U.S.C. §216(b)of the FLSA's requirements, and Plaintiff and the collective group members were covered employees entitled to the FLSA's protections.

56. This Count arises from Defendant's violation of the FLSA, 29 U.S.C. § 206(a)(1), for failing to pay Plaintiff and the collective group members the required minimum wage for each hour they worked.

57. Throughout the relevant period, the federal minimum wage rate for non-tipped employees was $7.25 per hour and the federal minimum wage rate for tipped employees was $2.83 per hour.

58. Defendant failed to pay Plaintiff and the collective group members the required minimum wage for their work "on the road."

59. Defendant paid its delivery drivers as little as $4.95 per hour plus $1.40 per mile, an average total wage of $11.95 per hour (based on five deliveries per hour). However, based on nationally-accepted minimum reimbursement calculations for business travel, Plaintiff and the collective group members wound up having to pay "out-of-pocket" approximately $13.38 per hour to provide, operate and maintain their vehicles. Since Plaintiff and the collective group members experiences a net *loss* of approximately $1.43 each hour they worked "on-the-road," Defendant's wage system for this work presents a clear FLSA violation.

60. In failing to ensure that Plaintiff and the collective group members received at least the tipped minimum wage rate for each hour they worked "on-the-road," Defendant acted willfully and with reckless disregard of clearly applicable FLSA provisions.

61. Defendant has no good faith justification or defense for failing to pay Plaintiff and the collective group members all wages mandated by the FLSA.

### COUNT II - VIOLATION OF THE ILLINOIS MINIMUM WAGE ACT
### (On Behalf Of Plaintiff And The Illinois Class)

62. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing allegations as though fully set forth herein.

63. At all relevant times, NPC was the "employer" of Plaintiff and members of the Illinois Class as the term is defined in 820 Ill. Comp. Stat. Ann. § 105/3(c).

64. At all relevant times, Plaintiff and the Illinois Class members were NPC's "employees" as the term is defined in 820 Ill. Comp. Stat. Ann. § 105/3(d).

{00284131 }                                            12

65. At all relevant times, Plaintiff and members of the Illinois Class have been entitled to the benefits, rights, and protections conferred by the IMWL. 820 Ill. Comp. Stat. Ann. § 105/1 *et seq.*

66. Pursuant to 820 Ill. Comp. Stat. Ann. § 105/4(a)(1), Illinois employees are entitled to be compensated at a rate of $8.25 per hour. Tipped employees are entitled to be compensated at 60% of that rate, provided that their tips make up the difference. Ill. Comp. Stat. Ann. § 105/4(c).

67. Illinois's tipped employees are entitled to receive at least the required minimum wage except the employer may claim gratuities as a credit toward the payment of no more than fifty percent of the required minimum wage. 820 Ill. Comp. Stat. Ann. § 105/4(c).

68. NPC knew or should have known that its reimbursement policy and practice failed to compensate delivery drivers at or above Illinois's minimum wage.

69. NPC has willfully violated Illinois law by failing to pay Plaintiff and Illinois Class members Illinois's applicable minimum wage rate.

70. NPC willfully failed to keep accurate records of all expenses incurred by its employees.

71. Plaintiff and Illinois Class members are victims of a uniform and employer-based compensation policy that has been applied to all delivery driver employees employed by NPC in Illinois.

72. Plaintiff and Illinois Class members are entitled to damages equal to the difference between the applicable minimum wage and actual wages received after deduction for job-related expenses plus liquidated damages of 2% of the amount of any such underpayments for each month

following the date of payment during which such underpayments remain unpaid. 820 Ill. Comp. Stat. Ann. § 105/12(a).

73. Plaintiff and Illinois Class members are entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate, as well as to reasonable attorneys' fees, costs, and expenses. 820 Ill. Comp. Stat. Ann. § 105/12(a).

## COUNT III - VIOLATION OF THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT
### (On Behalf Of Plaintiff And The Illinois Class)

74. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing allegations as though fully set forth herein.

75. The IWPCA, 820 Ill. Comp. Stat. Ann. § 115/3 *et seq.*, requires that "every employer shall be required, at least semimonthly, to pay every employee all wages earned during the semi-monthly pay period" and pay "final compensation" at the time of separation, if possible, or if not, by the next regularly scheduled payday for the employee.

76. During the applicable statute of limitations, by the course of conduct set forth above, Defendant has failed to pay Plaintiff and Illinois Class members all wages due in violation of the IWPCA. 820 Ill. Comp. Stat. Ann. § 115/3 *et seq*.

77. Because Defendants failed to properly pay wages due as required by law, Plaintiff is entitled to recover all wages due, 2% interest per month on all wages due until fully paid, costs, and reasonable attorneys' fees. Ill. Comp. Stat. Ann. § 115/3 *et seq*.

## COUNT VI – UNJUST ENRICHMENT
### (On Behalf Of Plaintiff And The Illinois Class)

78. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing allegations as though fully set forth herein.

79. Plaintiff and all other members of the Illinois Class have conferred benefits on Defendant by delivering pizza and other goods in exchange for the minimum wage. By under-reimbursing its drivers for their expenses, Defendant knowingly and willingly obtained monetary benefits from Plaintiff and the Illinois Class members to which it was not entitled.

80. Under the circumstances described herein, it is inequitable for Defendant to retain this monetary benefit at the expenses of Plaintiff and the Illinois Class members.

81. By engaging in the conduct described above, Defendant has been unjustly enriched at the expense of Plaintiff and the Illinois Class members and is required, in equity and good conscience, to compensate Plaintiff and the Illinois Class members for harm suffered as a result of its actions.

82. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Illinois Class members have suffered injury and are entitled to reimbursement, restitution, and disgorgement by Defendant of the benefit conferred by Plaintiff and the Illinois Class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully pray for an Order:

A. certifying this matter to proceed as a class action;

B. approving Plaintiff as adequate Class representative of the proposed Illinois Class;

C. appointing Finkelstein, Blankinship, Frei-Pearson & Garber, LLP and Morgan & Morgan, P.A. to serve as Class Counsel;

D. requiring Defendant to provide the names and current (or best known) addresses of all members of the identified Collective and Class;

E. authorizing Class Counsel to issue a notice informing the Class members that this action has been filed, of the nature of the action, and of their right to opt out of this lawsuit;

F. finding that Defendant willfully violated the applicable provisions of the FLSA by failing to pay all required wages to Plaintiffs and the collective group members;

G. finding that Defendant willfully violated the applicable provisions of the IMWA by failing to pay all required wages to Plaintiff Collins and the Illinois Class members;

H. finding that Defendant willfully violated the applicable provisions of the IWPCA by failing to pay all required wages to Plaintiff and the Illinois Class members;

I. granting judgment in favor of Plaintiff and the members of the collective group and Class on all Counts;

J. awarding all available compensatory damages in an amount to be determined;

K. awarding an equal amount of liquidated damages as provided by the FLSA;

L. awarding reasonable attorneys' fees and reimbursement of all costs and expenses incurred in litigating this action;

M. awarding all available equitable and injunctive relief precluding the continuation of the policies and practices pled in this Complaint;

N. awarding any further relief the Court deems just, necessary, and proper;

O. granting leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and

P. maintaining jurisdiction over this action to ensure Defendant's compliance with the foregoing.

## DEMAND FOR JURY TRIAL

Plaintiff, by and through his undersigned counsel, hereby demands a jury trial in the above-captioned matter.

Dated: April 11, 2017                                              Respectfully submitted,

*/s/ Jeremiah Frei-Pearson*
Jeremiah Frei-Pearson
(*Pro Hac Vice* application forthcoming)
**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**
Todd S. Garber
(*Pro Hac Vice* application forthcoming)
Chantal Khalil
(*Pro Hac Vice* application forthcoming)
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Telephone: (914) 298-3281
Facsimile: (914) 824-1561

**MORGAN & MORGAN, P.A.**
C. Ryan Morgan
(*Pro Hac Vice* application forthcoming)
20 North Orange Avenue, 14th Floor
P.O. Box 4979
Orlando, FL 32802-4979
Telephone: (407) 420-1414
Facsimile: (407) 245-3401

*Attorneys for Plaintiff
and the Putative Class*