UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JESSE TOURVILLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:17-cv-00373-SMY/SCW |
| ) | |
| MBR MANAGEMENT CORPORATION ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO STAY PROCEEDINGS**

The United States Supreme Court has agreed to decide an arbitration issue that may be dispositive of this potentially complex litigation. During his employment, Plaintiff agreed in a signed writing that he would bring any legal claim against Defendant MBR: (1) only in arbitration; and (2) only on an individual basis. The Federal Arbitration Act and federal public policy emphasize the importance of upholding such agreements. Plaintiff nonetheless filed his claims in this Court, alleging both his individual wage-and-hour claims and putative collective and class claims on behalf of unnamed others pursuant to 29 U.S.C. 216(b) and Rule 23.

On January 13, 2017, the Supreme Court accepted petitions for *certiorari* in three cases that raise the same issue presented by Plaintiff's agreement: whether an employee's agreement to resolve his claims in individual arbitration is enforceable. Litigating Plaintiff's Complaint will necessarily involve complex procedural and substantive issues. Rather than start down the road of such complex litigation, MBR requests that this Court await the decision of the Supreme Court. The Supreme Court's decision will likely render unnecessary any briefing of the arbitration issue in this case, and may dispose of the litigation itself. At no risk to the parties or the Court, a stay would save the parties significant time and expense and serve judicial economy.

## FACTUAL AND PROCEDURAL BACKGROUND

MBR operates Domino's Pizza stores in Illinois and Missouri. Compl. ¶ 11. Plaintiff formerly worked as a delivery driver for MBR in Illinois. Compl. ¶ 3. At the commencement of Plaintiff's employment with MBR, and as a condition of that employment, Plaintiff entered into an Agreement to Arbitrate. A copy of this Agreement is attached hereto as Exhibit A. This Agreement provided, in relevant part:

> Jesse Tourville ("Employee") and the Company (collectively the "Parties") agree to resolve any and all claims, disputes, or controversies arising out of or relating to Employee's application for employment, Employee's employment with the Company, and/or termination of employment exclusively by final and binding arbitration . . .
>
> Claims, disputes, and controversies covered by this Agreement must be brought on an individual basis. ***Neither Employee nor the Company may submit a class, collective, or representative action for resolution under this Agreement*** . . . arbitration on an individual basis pursuant to this Agreement is the exclusive remedy for any employment-related claims which might otherwise be brought on a class, collective or representative action basis.

*See* Ex. A, p. 1 (emphasis added). The Agreement specifically includes disputes involving unpaid wages and overtime as well as claims arising under the Fair Labor Standards Act and state compensation laws. *See* Ex. A, p. 3.[1]

Despite the Agreement, on April 11, 2017, Plaintiff filed his Class/Collective Action Complaint in this Court asserting violations of the Illinois Minimum Wage Law, the Illinois Wage Payment and Collection Act, and the Fair Labor Standards Act. *See* Compl. Plaintiff asserts individual wage-and-hour claims on his own behalf, and also putative collective and class wage-and-hour claims on behalf of others. Compl. ¶¶ 32, 37. In the absence of an enforceable arbitration agreement, it will be necessary for the Court to determine: (1) whether to certify Plaintiff's federal FLSA claims as a collective action pursuant to 29 U.S.C. §216(b); and (2)

---

[1] The individual who signed an affidavit in support of Plaintiff's Motion to Conditionally Certify likewise signed an arbitration agreement. *See* Ex. B, attached hereto.

whether to certify Plaintiff's state law claims as a class action pursuant to Federal Rule of Civil Procedure 23; and (3) whether and in what amount any employee in the case is entitled to recover. If, however, the Agreement is enforceable, Plaintiff is barred by the terms of the Agreement from pursuing his personal claim in court and from pursuing any collective or class claims on behalf of others. If the Agreement is enforceable, it will not be necessary for the Court or the parties to engage in procedurally and substantively complex collective and class litigation.

The enforceability of arbitration agreements, like Plaintiff's Agreement, is now before the United States Supreme Court. Accordingly, this case should be stayed pending the outcome of the Supreme Court's ruling. In the absence of a stay, whatever happens in this Court, including a possibly lengthy jury trial, may all prove to be for nothing.

**ARGUMENT**

**A.  The Supreme Court's Upcoming Decision Will Determine Whether and How Plaintiff's Claims May Proceed.**

On January 13, 2017, the United States Supreme Court granted petitions for writs of *certiorari* in three cases that addressed collective and class action waivers contained in employment arbitration agreements. *See Epic Systems Corp. v. Lewis*, No. 16-285 (U.S.); *Ernst & Young v. Morris*, No. 16-300 (U.S.); *NLRB v. Murphy Oil USA, Inc.*, No. 16-307 (U.S.). By granting these petitions, the Supreme Court agreed to decide whether agreements to arbitrate on an individual (and not collective) basis are enforceable or are, instead, rendered unenforceable by the National Labor Relations Act. The Courts of Appeal are currently split on the issue, although the majority of courts that have addressed the issue have held in favor of enforcing arbitration agreements and class waivers. *Compare Morris v. Ernst & Young, LLP*, 834 F.3d 975, 983-84 (9th Cir. 2016), *cert. granted*, – U.S. – (Jan. 13, 2017) (No. 16-300); *Cellular Sales of Missouri, LLC v. NLRB,* 824 F.3d 772 (8th Cir. 2016); *Lewis v. Epic Systems Corp.*, 823 F.3d 1147, 1154-

3

55 (7th Cir. 2016), *cert. granted,* – U.S. – (Jan. 13, 2017) (No. 16-285); *Murphy Oil USA, Inc. v. NLRB*, 808 F.3d 1013, 1015 (5th Cir. 2015), *cert. granted,* – U.S. – (Jan. 13, 2017) (No. 16-307); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2nd Cir. 2013).

The Supreme Court's decision in *Morris*, *Lewis*, and *Murphy Oil* will resolve this split, and thus determine whether Plaintiff's litigation may continue, or whether it should be compelled to individual arbitration without further judicial involvement.

## B.    This Court Should Stay The Case Pending The Supreme Court's Decision.

This Court has the inherent authority to stay this litigation pending the outcome of the Supreme Court's decision, and it should do so under the present circumstances.

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997). In the exercise of that discretion, "a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am.*, 544 F.2d 1207, 1215 (3d Cir. 1976). Indeed, "such stays are entered quite routinely." *Walker v. Monsanto Co. Pension Plan*, 472 F.Supp.2d 1053, 1055 (S.D. Ill. 2006) (collecting cases). In fact, the efficiency interest is so strong that a district court may order such a stay *sua sponte* when it is clear that a case before the Supreme Court may have broad implications for the case before the district court. *See Dare v. Wal-Mart Stores, Inc.*, 2003 WL 21147657 (D. Minn.). Among the considerations for granting a stay are "the potentiality of another case having a dispositive effect on the case to be stayed, the judicial economy to be saved by waiting on a dispositive decision, the public welfare, and the hardship-prejudice to the party opposing the stay, given its duration." *Michael v. Ghee*, 325 F.Supp.2d 829, 831 (N.D. Ohio) (granting stay where Supreme Court had granted *certiorari* on potentially dispositive

4

issue). *See also Hess v. Gray*, 85 F.R.D. 15, 27 (N.D. Ill. 1979) (a stay is appropriate where the interests of justice require it, the adjudication of the claim would be a waste of judicial effort, and the plaintiff would not be substantially harmed by the delay).

Those factors weigh heavily in favor of a stay here. Indeed, one district court has already stayed a case because of the Supreme Court's pending decision regarding the enforceability of class waivers in employment arbitration agreements. *See Rittman v. Amazon.com Inc.*, Case No. C16-1554-JCC, 2017 WL 1079926 (W.D. Wash. March 22, 2017).[2] That court correctly found that the Supreme Court's decision in the three cases now before it "will greatly simplify the case" and that further proceedings in the district court prior to the Supreme Court's decision would result in extensive and expensive discovery that could be rendered moot. *Id.* at *2-3.[3]

The same is true of this case. The Supreme Court's decision has the potential to dispose of Plaintiff's litigation, rendering moot anything this Court might do. Specifically, if the Supreme Court agrees with the majority of circuits, and upholds the enforceability of class waivers in arbitration agreements, that will dispose of Plaintiff's complex claims and send his individual claim to arbitration. It thus makes little sense for this litigation to go forward when the Supreme Court may soon confirm that Plaintiff's claims belong in individual arbitration. Similarly, judicial economy favors a stay. The case has only just begun, and anything this Court does from this point forward, other than issue a stay, would be subject to reversal depending on how the Supreme Court decides the arbitration issue. The public welfare factor may not be directly implicated here, but the public surely has an interest in avoiding needless litigation and

---

[2] The question in *Rittman* is whether the class and collective actions could include the tens of thousands of employees who had arbitration agreements. 2017 WL 1079926 at *1.

[3] Other Courts have similarly stayed cases pending the Supreme Court's decision. *See, e.g., Price-Simms, Inc. v. NLRB*, No. 15-1457 (D.C. Cir. Jan. 23, 2017) (ordering case removed from oral argument calendar and held in abeyance pending the Supreme Court's disposition of *Lewis*, *Morris*, and *Murphy Oil*); *Hoot Winc, LLC, et al. v. NLRB*, No. 15-72839 (9th Cir. Jan. 17, 2017) ("Submission of this appeal is deferred pending resolution of *Ernst & Young, LLP v. Morris*, cert. granted, 2017 WL 125665 (U.S. Jan. 13, 2017), and further order of this court.").

wasting the time of jurors. And although Plaintiffs may oppose a stay, any risk of prejudice to the plaintiffs does not outweigh the factors favoring a stay of these proceedings.[4] The delay resulting from a stay will be, in all likelihood, less than a year." *Ghee*, 325 F.Supp.2d at 833. If the Supreme Court's determination is that agreements like the Agreement are unenforceable, then the case may proceed. If the Supreme Court's determination, however, is that the Agreement is enforceable, then a stay will have saved the parties and itself a great expenditure of resources.

## CONCLUSION

The United States Supreme Court's decision *Lewis*, *Morris*, and *Murphy Oil* will determine whether Plaintiff can pursue his class and collective action claims in this Court. Accordingly, Defendant MBR Management Corporation respectfully requests that the Court issue an Order immediately staying further proceedings in this matter until the Supreme Court renders its decision.

---

[4] To eliminate any prejudice related to the statute of limitations, Defendant will agree that the statute of limitations shall be tolled during the pendency of the stay. If the Supreme Court decides against Defendant's position, the stay will actually put the unnamed employees in a better position than they would have been absent the stay. That is because, absent Defendant's tolling agreement, the federal statute of limitations continues to run against employees up to the day they affirmatively opt-in to this case.

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.


*/s/ Rodney A. Harrison*
Rodney A. Harrison,
David L. Schenberg, #6220207
Meredith A. Lopez, #6311188
7700 Bonhomme Avenue, Suite 650
St. Louis, Missouri 63105
Telephone: 314.802.3935
Facsimile: 314.802.3936
rodney.harrison@ogletreedeakins.com
david.schenberg@ogletreedeakins.com
meredith.lopez@ogletreedeakins.com

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2017, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following: Jeremiah Frei-Pearson, Todd S. Garber, and Chantal Khalil.

I hereby certify that on May 9, 2017, the foregoing was served by first class-mail, postage prepaid, to the following non-participant:

C. Ryan Morgan
MORGAN & MORGAN, P.A.
20 North Orange Ave., 14th Floor
P.O. Box 4979
Orlando, FL 32802-4979


*/s/ Rodney A. Harrison*

29619201.2